1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

UNITED STATES OF AMERICA,

Plaintiff,

v.

SHELTON SMITH,

Defendant.

Case No. CR19-107RSL

ORDER GRANTING
DEFENDANT'S MOTION
FOR COMPASSIONATE
RELEASE

This matter comes before the Court on defendant's "Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)." Dkt. #36. The Court, having considered the motion, exhibits, and the record contained herein, finds as follows:

## I.    PROCEDURAL MOTIONS

As a threshold matter, the Court finds that compelling reasons justify sealing Exhibit A to the government's response. Accordingly, the government's motion to seal (Dkt. #40) is GRANTED. Defendant's motion to file an overlength reply (Dkt. #44) is also GRANTED.

## II.    BACKGROUND

Defendant is a 51-year-old inmate currently detained at the Jesup Federal Correctional Institution ("FCI"). In September 2019, defendant pled guilty to wire fraud in violation of 18 U.S.C. § 1343. Dkt. #19. On December 19, 2019, defendant was sentenced to fifty-one months' imprisonment and three years of supervised release. Dkt. #34. He commenced his term of imprisonment on January 28, 2020. Dkt. #35. Defendant is currently scheduled for release

ORDER GRANTING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE - 1

from the custody of the Federal Bureau of Prisons ("BOP") on September 9, 2023.  He now
moves for compassionate release.

## III.   LEGAL FRAMEWORK

The compassionate release statute provides narrow grounds for defendants in
"extraordinary and compelling" circumstances to be released from prison early.  See 18 U.S.C.
§ 3582(c).  The First Step Act of 2018 amended the procedural requirements governing
compassionate release.  See id.  Prior to the First Step Act's passage, only the Director of the
BOP could bring motions for compassionate release.  The Director rarely filed such motions.
See, e.g., United States v. Brown, 411 F. Supp. 3d 446, 448 (S.D. Iowa 2019).  Congress
amended the statute to allow defendants to directly petition district courts for compassionate
release.  As amended, 18 U.S.C. § 3582(c)(1)(A) states in relevant part,

> (c) Modification of an imposed term of imprisonment.—The court may not
> modify a term of imprisonment once it has been imposed except that—
>
>> (1) in any case—
>>
>>> (A) the court, upon motion of the Director of the Bureau of
>>> Prisons, or upon motion of the defendant after the defendant
>>> has fully exhausted all administrative rights to appeal a failure
>>> of the Bureau of Prisons to bring a motion on the defendant's
>>> behalf or the lapse of 30 days from the receipt of such a
>>> request by the warden of the defendant's facility, whichever
>>> is earlier, may reduce the term of imprisonment (and may
>>> impose a term of probation or supervised release with or
>>> without conditions that does not exceed the unserved portion
>>> of the original term of imprisonment), after considering the
>>> factors set forth in section 3553(a) to the extent that they are
>>> applicable, if it finds that—
>>>
>>>> (i) extraordinary and compelling reasons warrant such
>>>> a reduction;  . . .
>>>>
>>>> (ii)  . . .
>>>>
>>>> and that such a reduction is consistent with the
>>>> applicable policy statements issued by the Sentencing
>>>> Commission[.]

Prior to passing the First Step Act, Congress directed the Sentencing Commission to promulgate a policy statement defining "extraordinary and compelling reasons" in the compassionate release context. See 28 U.S.C. § 994(t). Section 994(t) provides,

> The Commission, in promulgating general policy statements regarding the sentencing modification provisions in [18 U.S.C. § 3582(c)(1)(A)], shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples. Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason.

The Sentencing Commission implemented this directive from Congress with a policy statement—U.S.S.G. § 1B1.13. In relevant part, the policy statement provides,

> **Reduction in Term of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A) (Policy Statement)**
>
> Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent they are applicable, the court determines that—
>
> > (1)(A) Extraordinary and compelling reasons warrant the reduction; . . .
> >
> > (2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
> >
> > (3) The reduction is consistent with this policy statement.
>
> **Commentary**
>
> **Application Notes:**
>
> > 1. **Extraordinary and Compelling Reasons.**—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:
> >
> > > (A) **Medical Condition of the Defendant**—
> > >
> > > > (i)   The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time

ORDER GRANTING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE - 3

period) is not required.  Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

    (ii)    The defendant is—

        (I)    suffering from a serious physical or medical condition,

        (II)    suffering from a serious functional or cognitive impairment, or

        (III)    experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(B) **Age of the Defendant.**—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(C) **Family Circumstances.**—

    (i)    The death or incapacitation of the caregiver of the defendant's minor child or minor children.

    (ii)    The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(D) **Other Reasons.**—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

2. **Foreseeability of Extraordinary and Compelling Reasons.**— For purposes of this policy statement, an extraordinary and compelling reason need not have been unforeseen at the time of sentencing in order to warrant a reduction in the term of imprisonment.  Therefore, the fact that an extraordinary and compelling reason reasonably could have been known or

anticipated by the sentencing court does not preclude consideration for a reduction under this policy statement.

3. **Rehabilitation of the Defendant.**—Pursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement.

4. **Motion by the Director of the Bureau of Prisons.**—A reduction under this policy statement may be granted only upon motion by the Director of the Bureau of Prisons pursuant to 18 U.S.C. § 3582(c)(1)(A). The Commission encourages the Director of the Bureau of Prisons to file such a motion if the defendant meets any of the circumstances set forth in Application Note 1. The court is in a unique position to determine whether the circumstances warrant a reduction (and, if so, the amount of reduction), after considering the factors set forth in 18 U.S.C. § 3553(a) and the criteria set forth in this policy statement, such as the defendant's medical condition, the defendant's family circumstances, and whether the defendant is a danger to the safety of any other person or to the community.

This policy statement shall not be construed to confer upon the defendant any right not otherwise recognized in law[.]

U.S.S.G. § 1B1.13.[1]

## IV.   DEFENDANT'S CIRCUMSTANCES

### a.   Exhaustion Requirement

Prior to considering the merits of defendant's compassionate release motion, the Court must determine whether he has met the statutory exhaustion requirement for compassionate release. See 18 U.S.C. § 3582(c)(1)(A). Defendant asserts that he submitted a request for compassionate release to his case manager in late March 2020. Dkt. #36 at 3. On April 4, 2020, defendant's wife submitted a compassionate release request on defendant's behalf to the Warden of Jesup FCI. Dkt. #36-1 (Ex. 1). The request was denied on April 6, 2020. Id. Accordingly,

---

[1] For the reasons set forth in detail in United States v. Van Cleave, Nos. CR03-247-RSL, CR04-125-RSL, 2020 WL 2800769, at *3-5 (W.D. Wash. May 29, 2020), "the Court finds the guidance of U.S.S.G. § 1B1.13 persuasive, but not binding." Id. The Court will exercise its discretion to consider "extraordinary and compelling" circumstances that may exist beyond those explicitly identified by the Sentencing Commission in its outdated policy statement. Id.

1   the parties agree that defendant has exhausted his administrative remedies.  The Court will

2   consider the merits of the compassionate release motion.

3                    **b.  Extraordinary and Compelling Reasons**

4           When filed, defendant's motion for compassionate release was based primarily upon his

5   heightened risk for developing serious complications if he were to contract COVID-19 while

6   incarcerated at Jesup FCI.  The Court need not reiterate the widely-known information regarding

7   the symptoms of COVID-19 and the devastating global impact of the virus.  COVID-19 has

8   created unprecedented challenges for federal prisons, where inmate populations are large and

9   close contact between inmates is unavoidable.  As of July 24, 2020, the BOP reports that 4,251

10  federal inmates and 400 BOP staff have active, confirmed positive COVID-19 test results.  See

11  COVID-19 Coronavirus, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited

12  July 24, 2020).  Since the BOP reported its first case in late March 2020, at least ninety-nine

13  federal inmates and one BOP staff member have died from the virus.  Id.  Unfortunately, Jesup

14  FCI is suffering an outbreak of COVID-19, and currently reports 256 active inmate cases and

15  thirteen active staff cases.  Id.  One inmate at Jesup FCI has died from the virus.  Id.

16          Defendant has established that his underlying health conditions place him at higher risk

17  for developing complications from COVID-19.  A review of his BOP medical records confirms

18  that he suffers from type II diabetes and obesity.  Dkt. #37 (Ex. 4) at 83.  He has also smoked

19  cigarettes habitually for 30 years.  Id. at 37.  The government concedes that defendant's health

20  issues would normally constitute "extraordinary and compelling" circumstances, see Dkt. #39 at

21  5, because he suffers from type II diabetes and obesity, underlying medical conditions that the

22  Centers for Disease Control ("CDC") has recognized as increasing an individual's risk of

23  developing COVID-19 complications.  See Dkt. #36-2 (Ex. 2).  Unfortunately, since filing his

24  motion, defendant has tested positive for COVID-19.  See Dkt. #41 at 125, 128 (noting

25  confirmed case of COVID-19 as of July 13, 2020).  Thankfully, as of July 16, 2020, defendant is

26  asymptomatic for the virus and appears to be doing well.  Id.; Dkt. #46 at 1.  According to his

27  medical records, he is in isolation and is not suffering from any distress or symptoms.  Dkt. #46

28  at 1.

ORDER GRANTING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE - 6

1       Because defendant's motion was originally premised on the heightened risks he might

2  face *if* he contracted COVID-19, his positive COVID-19 diagnosis alters the Court's

3  compassionate release analysis.  Defendant contends that his positive COVID-19 test does not

4  diminish his need for compassionate release, emphasizing the scientific uncertainties

5  surrounding recovery from the virus, including whether those who have recovered from

6  COVID-19 may be susceptible to reinfection.  Dkt. #45 at 2-5.  While the government argues

7  that defendant is now at reduced risk for reinfection from COVID-19, Dkt. #39 at 6-7, recent

8  data calls that conclusion into question.  See, e.g., Patrick Henry, <u>WHO Warns You May Catch</u>

9  <u>Coronavirus More Than Once</u>, Bloomberg (Apr. 25, 2020, 1:44 A.M.),

10  https://www.bloomberg.com/news/articles/2020-04-25/catching-covid-19-may-not-shield-

11  against-new-infection-who-says.  Much about the virus remains unknown.  The Court will not

12  deny defendant's motion for health-based compassionate release based solely upon a speculation

13  that, if he remains incarcerated during the COVID-19 pandemic, he is at reduced risk because he

14  already contracted the virus once.  Defendant's underlying health conditions place him at

15  heightened risk for developing serious complications from COVID-19, and the Court finds he

16  has met his burden to establish that "extraordinary and compelling reasons" warrant his

17  compassionate release.  18 U.S.C. § 3582(c)(1)(A)(i).

18                **c.  Additional Considerations**

19       Before the Court can grant defendant's request for compassionate release, it must also

20  find that he "is not a danger to the safety of any other person or to the community, as provided

21  in 18 U.S.C. § 3142(g)."  U.S.S.G. § 1B1.13.  The offense that led to defendant's current term of

22  imprisonment is very serious.  While defendant was employed as a project manager at Vigor

23  Marine, LLC, he implemented a fraudulent scheme that allowed him to defraud his employer of

24  nearly $1.5 million.  PSR at ¶¶ 1-19.  However, as troubling as defendant's conduct was, he has

25  no prior criminal history and his crime was nonviolent.  The U.S. Probation Office has approved

26  defendant's release plan, which involves living with his wife and children at his mother-in-law's

27  home in Orlando, Florida.  In light of these circumstances, the Court finds defendant is not a

28

ORDER GRANTING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE - 7

1   danger to the safety of any other person or to the community as provided in § 3142(g).  U.S.S.G.
2   § 1B1.13.

3         In addition, prior to granting compassionate release, the Court must assess whether a
4   sentence reduction to time served is consistent with the sentencing factors set forth in 18 U.S.C.
5   § 3553(a).  See 18 U.S.C. § 3582(c)(1)(A).  Section 3553(a) requires the Court to "impose a
6   sentence sufficient, but not greater than necessary, to comply with the purposes set forth in
7   paragraph (2)," which requires that a sentence reflect the seriousness of and provide just
8   punishment for the offense.  18 U.S.C. § 3553(a).  Again, the offense that led to defendant's
9   current term of imprisonment is very serious, and as the government emphasizes, he has served
10  just over ten percent of his 51-month sentence.  Defendant deserved the sentence the Court
11  imposed in December 2019.  But the extraordinary nature of the COVID-19 pandemic has
12  altered life as we know it.  The risks to defendant's life and health now outweigh the punitive
13  benefits that would be gained from keeping him incarcerated at this time.  Cf. United States v.
14  Pippin, CR16-266-JCC, 2020 WL 2602140, at *3 (W.D. Wash. May 20, 2020).  Accordingly,
15  the Court intends to convert defendant's remaining term of imprisonment into a one-year term of
16  home detention as an additional condition of supervised release.  Under these circumstances, the
17  Court is satisfied that the objectives of § 3553(a) are satisfied.

18        **V.    CONCLUSION**

19        For all the foregoing reasons, defendant's Motion for Compassionate Release (Dkt. #36)
20  is GRANTED.  Additionally, the government's motion to seal (Dkt. #40) and defendant's
21  motion to file an overlength reply (Dkt. #44) are GRANTED.

22        IT IS HEREBY ORDERED that defendant's custodial sentence be reduced to time
23  served and that the remaining term of incarceration be converted into twelve (12 months) of
24  home detention as an additional condition of supervised release.  During this time, defendant
25  shall remain at his place of residence except for employment and other activities approved in
26  advance by his Probation Officer.  He will be subject to the standard conditions of Home
27  Detention adopted for use in the Middle District of Florida, which may include the requirement
28  to wear an electronic monitoring device and to follow electronic monitoring procedures

specified by the Probation Officer.  Further, defendant shall be required to contribute to the costs of these services not to exceed an amount determined reasonable by the Probation Office based on ability to pay.

IT IS FURTHER ORDERED that all other provisions of sentencing remain as previously set.  Upon completion of the term of home detention, defendant shall begin serving the three-year term of supervised release previously imposed by the Court.

IT IS FURTHER ORDERED that defendant shall be released fourteen (14) days from the date of this order to accommodate a quarantine period with the Federal Bureau of Prisons.  If defendant tests positive for COVID-19 any time during this quarantine period, BOP will notify the government who will immediately notify the Court so that this order can be modified appropriately.  Defendant shall be released to his approved release address of 6208 Marlberry Drive, Orlando, Florida 32819.

DATED this 29th day of July, 2020.


_Robert S. Lasnik_
Robert S. Lasnik
United States District Judge

ORDER GRANTING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE - 9